UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| CARTEZ HORNE, | ) |
| --- | --- |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 3:23-CV-449-TAV-DCP ) |
| JUSTIN THURMAN, SEAN PHILLIPS, and JOHN HOLLINGSWORTH, | ) ) ) ) ) |
| Defendants. | |

# MEMORANDUM OPINION AND ORDER

Now before the Court are Plaintiff's (1) pro se complaint for violation of 42 U.S.C. § 1983 arising out of injuries that he, a Tennessee Department of Correction ("TDOC") inmate housed in the Bledsoe County Correctional Complex ("BCCX"), allegedly incurred relating to a fall on a TDOC transport bus [Doc. 1] and (2) motion to change venue [Doc. 4]. For the reasons set forth below, Plaintiff's motion to change venue [Doc. 4] will be **DENIED**, and this action will be **DISMISSED** because Plaintiff's complaint fails to state a claim upon which relief may be granted under § 1983.

## I. Venue

Plaintiff requests that the Court transfer this action to the United States District Court for the Middle District of Tennessee because the incidents in his complaint took place in Davidson County, Tennessee, and the prison "legal [a]id[e]s" gave him incorrect information [Doc. 4, p. 1].

Under 28 U.S.C. § 1404(a), this Court may transfer this action to another district where the action "might have been brought," or to which all parties consent, "[f]or the convenience of parties and witnesses." Under 28 U.S.C. § 1391(b), a civil action may be brought in: (1) a judicial district where any defendant resides, if all defendants reside in the same state; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time that the action is commenced, if there is no district in which the action may otherwise be brought.

A district court has broad discretion to transfer an action to any district in which a plaintiff could have brought it, and § 1404 gives considerable weight to a plaintiff's choice of forum. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (citations omitted). In deciding whether to transfer a case, district courts consider "six factors: the convenience of the parties and witnesses, the accessibility of evidence, the availability of process to make reluctant witnesses testify, the costs of obtaining willing witnesses, the practical problems of trying the case most expeditiously and inexpensively and the interests of justice." *Id.* (citations omitted). The court also should consider public interests, including "'systemic integrity and fairness.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th 2006) (quoting *Moses v. Bus Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)). The movant has the burden to demonstrate that the change in venue is appropriate. *Scott*

*v. White*, 539 F. Supp. 831, 846–47 (M.D. Tenn. 2021) (citing *Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 652 n.7 (6th Cir. 2016)).

As the incidents underlying Plaintiff's complaint occurred in Davidson County, Tennessee, Plaintiff could have filed his complaint in the Middle District of Tennessee. 28 U.S.C. § 1391(b)(2); 28 U.S.C. § 123(b)(1). And it is apparent from his motion that Plaintiff seeks to litigate this case in the Middle District of Tennessee. But it also appears from Plaintiff's statement in his motion that the "legal [a]id[e]s" gave him the wrong information that he may seek this change of venue because he believes that this District is not a proper venue for this action. However, as Plaintiff states in his complaint that all Defendants are employed by BCCX [Doc. 1, pp. 2–3], which is located within this District, it seems almost certain that at least one Defendant also resides in this district, which would mean that this District is a proper venue for this action. 28 U.S.C. § 1391(b)(1). Moreover, Plaintiff and at least two of the witnesses he lists in his complaint [*Id.* at 6] are also housed in BCCX. *See* https://foil.app.tn.gov/foil/search.jsp (last visited April 5, 2024).

Thus, it appears that keeping this action in this Court would (1) be more convenient to the parties and witnesses, (2) allow for service on any reluctant witnesses, and (3) decrease the costs of obtaining witnesses. Moreover, it appears likely that the transportation bus at issue in Plaintiff's complaint would be located at BCCX, such that this evidence would be accessible in this district. As such, the Court finds that many of the relevant factors weigh in favor of keeping this action in this district and notes that Plaintiff

3

has not demonstrated that any of the applicable factors weigh in favor of transferring the case.

Accordingly, after balancing the relevant factors, the Court finds that transfer of this action is not warranted at this time, and Plaintiff's motion [Doc. 4] will be **DENIED**.

## II.  Complaint Screening

### A.  Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).  The dismissal standard the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)."  *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).  Thus, to survive a PLRA initial review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief.  *Id.* at 681.  Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim.  *Twombly*, 550 U.S. at 570.  However, courts liberally construe pro se pleadings and hold them to a less

4

stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him of a federal right. 42 U.S.C. § 1983.

B.     **Allegations**

While Plaintiff was on a transportation bus going from BCCX to Nashville, the bus had mechanical problems that plaintiff alleges "caus[ed] the bus to be very unsafe" [Doc. 1, p. 6]. The bus broke down twice on the trip to Nashville. During these breakdowns, Corporal ("Cpl.") Justin Thurman and Cpl. John Hollingsworth pulled over and refilled unspecified "fluid to keep the bus from running hot." Each time the corporals refilled this fluid, the fluid would leak down the aisle of the bus, which Plaintiff states caused him to be unsafe and to have his feet sitting in standing fluid. Inmates on the bus told Cpl. Thurman and Cpl. Hollingsworth about the fluid, but these Defendants stated that they were too far to turn around [*Id.*].

When the bus arrived at its destination, Cpl. Thurman laid soak pads on the floor where the employees were but not where the inmates were, which Plaintiff states "made [his] walk to the front door very unsafe again" [*Id.*]. Plaintiff asked Cpl. Thurman to assist him in walking through the fluid since he was in shackles, but Cpl. Thurman responded "'NO'" because both of them could not fit in the "small hallway" [*Id.*].

As Plaintiff began to walk, he slipped and had "a hard fall" that caused injury and pain to his left knee, left elbow, and lower back [*Id.*]. Plaintiff laid on the floor and began

5

screaming for help. Cpl. Thurman and Cpl. Hollingsworth stated that they could not lift Plaintiff due to "[his] oversize[] and weight," so they pulled him while Plaintiff "scream[ed] and ask[ed] them to stop" [*Id.*]. In a grievance document regarding this incident, Plaintiff specifies that he screamed that his knee was in pain when these Defendants dragged him [Doc. 2, p. 8][1]. But Cpl. Thurman and Cpl. Hollingsworth did not stop dragging Plaintiff, and Plaintiff "felt a small pop [in] the left lower part of his back/hip" [Doc. 1, p. 6].

Plaintiff asked for medical help, but Cpl. Thurman and Cpl. Hollingsworth did not think Plaintiff's injury was serious and did not call for medical until they realized Plaintiff was in pain, at which point they got Plaintiff help [*Id.*]. Witnesses and bus cameras observed this incident [*Id.*].

According to Plaintiff, Cpl. Thurman and Cpl. Hollingsworth knew the bus was having problems before the bus left BCCX due to seeing fluid leaking on the ground, and the same bus had mechanical problems "for almost a year" [*Id.*]. Plaintiff further claims that Warden Sean Phillips "is responsible for the injuries also due to him knowing that transportation bus was and has been having mechanical problems before [Plaintiff] getting on the bus" [*Id.* at 5].

---

[1] Although Plaintiff omitted this detail regarding what he screamed at Cpl. Thurman and Cpl. Hollingsworth from his complaint, the recitations of the facts underlying his grievance [Doc. 2, pp. 7–8] are otherwise essentially identical to those in his complaint [Doc. 1, p. 6].

C.    Analysis

The Court liberally construes Plaintiff's complaint to allege (1) two claims for failure to protect arising out of the bus's mechanical issues and the fluid on the bus's floor; (2) one claim for excessive force arising out of Cpl. Thurman and Cpl. Hollingsworth dragging him off the bus; and (3) one claim based on Cpl. Thurman and Cpl. Hollingsworth's failure to immediately summon medical help for him.  The Court will address these claims in turn.

1.    **Failure to Protect**

As set forth above, Plaintiff claims that (1) Warden Phillips, Cpl. Thurman, and Cpl. Hollingsworth placed him on a bus that had mechanical issues and (2) Cpl. Thurman and Cpl. Hollingsworth failed to protect him from slipping and falling on the wet floor due to the bus's leaking fluids when he got off the bus.  The Court will set forth the applicable legal standard before examining these claims.

a.    **Standard**

It is well-settled that prison officials have a duty to take reasonable measures to protect prisoners' safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). Liability attaches to a prison official's failure to protect a prisoner where the prisoner was "incarcerated under conditions posing a substantial risk of serious harm," and the prison official acted with deliberate indifference to the prisoner's safety. *Id*. at 834.  "Deliberate indifference" means that a prison official is liable only where he knows that the inmate

faces a substantial risk of serious harm and disregards that risk. *Id*. at 837 (quotation marks omitted).

### b. Bus

Plaintiff alleges that Defendants knew the bus had mechanical issues prior to placing Plaintiff on the bus, Cpl. Thurman and Cpl. Hollingsworth had to refill the bus's fluids twice on the way to Nashville because of it breaking down, and unspecified fluids leaking inside the bus reached his feet. However, these allegations do not allow the Court to plausibly infer that any Defendant was deliberately indifferent to a substantial risk of harm to Plaintiff. Specifically, the only mechanical issue Plaintiff mentions regarding the bus is that it was leaking fluids and therefore seemingly overheating. However, Plaintiff sets forth no facts to suggest that the bus's overheating posed a substantial risk of harm that any Defendant ignored. Instead, it is apparent that Cpl. Thurman and Cpl. Hollingsworth reasonably reacted to the overheating by refilling the bus's fluids to try to prevent a recurrence. While this appears to have been only a temporary fix, the Court cannot plausibly infer that the bus posed a constitutionally unacceptable risk of serious harm to Plaintiff, especially as Cpl. Thurman and Cpl. Hollingsworth were subjecting themselves to a similar level of risk from the bus overheating.

Regarding the fluids that leaked on the floor of bus, Plaintiff does not allege that those fluids touched his skin. But even if the Court assumes that they did, Plaintiff also presents no facts from which the Court can plausibly infer that this exposure harmed him,

8

or that any Defendant knew that this seemingly brief exposure to the fluids posed a substantial risk of harm to him.

Thus, Plaintiff's allegations regarding the bus's mechanical issues fail to state a claim upon which relief may be granted under § 1983.

    **c.    Slip and Fall**

Plaintiff next claims that Cpl. Thurman and Cpl. Hollingsworth failed to protect him from falling in the leaked fluids on the bus floor, even though he requested that Cpl. Thurman assist him with exiting the bus because he was shackled. It is unclear from the complaint whether Plaintiff's wrists, ankles, or both were shackled. But even if the Court assumes that both Plaintiff's wrists and ankles were shackled, the Sixth Circuit has held that slip and fall incidents do not rise to the level of a constitutional violation. *Lamb v. Howe*, 677 F. App'x 204, 208–09 (6th Cir. 2017) (noting that "the federal courts have nearly unanimously held that a 'slip and fall, without more, does not amount to cruel and unusual punishment'"). In *Lamb*, the plaintiff alleged that the darkness of his flooded cell and the fact that he fell into toilet water were exacerbating factors that raised his slip and fall to the level of a constitutional violation. But the Sixth Circuit disagreed. *Id.* (finding that the plaintiff's allegations that the cell was dark when he fell and that he fell in contaminated fluid did not raise the slip and fall to the level of a constitutional violation, as the plaintiff was aware of the flooding and was only temporarily exposed to the fluids, and jail officials were cleaning up the fluids during the relevant time period).

9

Case 3:23-cv-00449-TAV-DCP   Document 7   Filed 08/29/24   Page 9 of 13   PageID #: 47

Like the plaintiff in *Lamb*, it is apparent that Plaintiff was aware of the wet floor on the bus prior to his fall. Also like the plaintiff in *Lamb*, Plaintiff also does not allege that he was exposed to the bus's fluids for an extended period of time. Moreover, and perhaps most notably, while the Sixth Circuit in *Lamb* acknowledged that exacerbating circumstances could elevate a slip and fall claim to a constitutional violation, the case that the Sixth Circuit cited to support this statement had much more severe facts than those at issue in this case. *Id.* at 209 (citing *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) for its "holding that where the plaintiff was disabled, had to use crutches, and had fallen many times due to slippery conditions in the shower, and prison officials were aware of all of these facts, the plaintiff could potentially state a deliberate-indifference claim").

Thus, the Court finds that Plaintiff has not set forth facts from which the Court can plausibly infer that any Defendant was deliberately indifferent to his risk of falling when he exited the bus, and these allegations are **DISMISSED**.

### 2. Excessive Force

Plaintiff also claims that, after he fell in the bus fluids and screamed that he was in pain, Cpl. Thurman and Cpl. Hollingsworth dragged him off the bus while he screamed that his knee was hurting and asked them to stop, at which point Plaintiff felt a "small pop" in his lower back/hip. The Court liberally interprets this allegation to assert a claim for excessive force in violation of the Eighth Amendment.

"[T]he unnecessary and wanton infliction of pain" violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Whitley v. Abers*, 475 U.S. 312, 319

10

(1986); *Hudson v. McMillan*, 503 U.S. 1, 8 (1992). Where a prisoner alleges that an official used excessive force against him, courts must examine two issues to determine whether the force violated the Eighth Amendment: (1) "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm[,]" which is known as the subjective component; and (2) whether the conduct, in context, is sufficient serious to offend "contemporary standards of decency[,]" which is known as the objective component. *Hudson*, 503 U.S. at 6, 9.

In examining the subjective component, the court considers the need for the use of force, the relationship between the need for force and the force used, the threat the official reasonably perceived, and the extent of the injury. *Id.* at 7. To satisfy the objective component, a prisoner does not have to incur a serious injury, but the extent of the injury may be probative of whether the force was plausibly "thought necessary" in the situation. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). But "not every malevolent touch by a prison guard" creates a federal claim, and *de minimis* uses of force that are not repugnant to the conscience do not violate the Eighth Amendment. *Id*. (internal quotation marks omitted).

Plaintiff's complaint does not allow the Court to plausibly infer that Cpl. Thurman and Cpl. Hollingsworth's act of continuing to drag Plaintiff despite his protestations was a malicious or sadistic act that is repugnant to the conscience, rather than a good faith effort to get Plaintiff off the bus floor that was covered in fluid. While Plaintiff states that he was screaming about his knee pain and asking Cpl. Thurman and Cpl. Hollingsworth to stop

11

dragging him, he does not set forth any facts from which the Court can plausibly infer that Cpl. Thurman and Cpl. Hollingsworth intended to cause him harm by dragging him, or even that these Defendants knew that the dragging subjected Plaintiff to a substantial risk of serious harm. To the contrary, while Plaintiff alleges in his complaint that he had already screamed about his injuries before this dragging, he also indicates that Cpl. Thurman and Cpl. Hollingsworth did not yet think that his injuries were serious and that these Defendants could not lift him. Thus, it is apparent that by dragging Plaintiff off the bus, Cpl. Thurman and Cpl. Hollingsworth were reasonably attempting to assist Plaintiff in the only manner readily available to them at the time.

Accordingly, Plaintiff's allegations regarding Cpl. Thurman and Cpl. Hollingsworth dragging him fail to allow the Court to plausibly infer a violation of his constitutional rights, and they are **DISMISSED**.

### 3. Failure to Obtain Medical Care

Plaintiff next claims that Cpl. Thurman and Cpl. Hollingsworth violated his constitutional rights because they did not summon medical care for him until they realized his injury was serious. To demonstrate a violation of the Eighth Amendment with regard to his medical treatment, Plaintiff must show a "sufficiently serious" medical need to which Defendants responded with "deliberate indifference." *Farmer*, 511 U.S. at 834, 842. That is, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

As set forth above, Plaintiff alleges that Cpl. Thurman and Cpl. Hollingsworth obtained medical care for him when they realized his injury was serious. Thus, it is readily apparent from the face of Plaintiff's complaint that when Cpl. Thurman and Cpl. Hollingsworth drew the inference that Plaintiff needed medical care, they sought such care for him.

As such, Plaintiff's allegations regarding Cpl. Thurman and Cpl. Hollingsworth not immediately obtaining medical care for him do not rise to the level of a constitutional violation, and they are **DISMISSED**.

## IV. Conclusion

For the reasons set forth above:

1. Plaintiff's motion to change venue [Doc. 4] is **DENIED**;

2. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983;

3. Accordingly, this action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

4. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE